UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RANDLE GRIFFIN,

                    Petitioner,

                                              CASE NO. 1:07-CV-14402
      v.                                      JUDGE THOMAS L. LUDDINGTON
                                              MAGISTRATE JUDGE PAUL J. KOMIVES

CAROL R. HOWES,

                    Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
       C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
       D.    *Post Conviction Relief Claims (Claims I & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
       E.    *Perjured Testimony (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
             1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
             2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
       F.    *Sentencing Claims (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
       G.    *Ineffective Assistance of Counsel (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
             1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
             2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
                   a. Failure to Interview/Present Kenneth Strauthers  . . . . . . . . . . . . . . . . . . . . . . . . . .  24
                   b. Failure to Obtain Medical Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
                   c. Failure to Challenge Statement on Fourth Amendment Grounds . . . . . . . . . . . . . . .  28
                   d. Failure to Object at Sentencing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
       H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

_____

      [1]By Order entered this date, Carol R. Howes has been substituted in place of Linda Metrish as
the proper respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Randle Griffin[2] is a state prisoner, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan.

2.      On February 21, 1991, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  Petitioner was subsequently sentenced to a term of parolable life imprisonment on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO RULE ON THE ADMISSIBILITY OF DEFENDANT'S STATEMENT TAKEN BY THE POLICE WHEN CHALLENGED ON CONSTITUTIONAL GROUNDS AS BEING INVOLUNTAR[ILY] GIVE[N] AND IN DEROGATION OF HIS RIGHT TO COUNSEL.

II.     THE TRIAL COURT'S INSTRUCTION TO THE JURY SHIFTED THE BURDEN OF PROOF IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTION.

III.    DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS UNDER THE FEDERAL AND STATE CONSTITUTIONS WHEN THE TRIAL COURT FORECLOSED THE POSSIBILITY OF HAVING TESTIMONY RE-READ TO THE JURY DURING DELIBERATIONS.

---

[2]In his habeas application, petitioner's name is spelled "Randle."  However, in other pleadings in this Court and in the state court papers petitioner's name is spelled "Randall."  I use the spelling set forth in the caption throughout this Report, unless directly quoting a source using a different spelling.

IV.   DEFENDANT WAS DENIED A FAIR TRIAL AND THE BURDEN OF
      PROOF WAS SHIFTED BY TESTIMONY FROM THE OFFICER THAT
      THE PROSECUTOR'S OFFICE RECOMMENDED A WARRANT
      AGAINST THE DEFENDANT AND WAS REVIEWED AND ISSUED BY
      A JUDGE.

V.    IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO FAIL TO
      INSTRUCT THE JURY ON THE BURDEN OF PROOF REGARDING
      SELF DEFENSE.

VI.   THE STANDARD ORDER OF DELIBERATION INSTRUCTION GIVEN
      VIOLATED DEFENDANT'S FEDERAL AND STATE
      CONSTITUTIONAL RIGHT TO BE PRESUMED INNOCENT.

VII.  IT WAS ERROR FOR THE TRIAL JUDGE TO GIVE WRITTEN
      INSTRUCTIONS ON THE ELEMENTS OF THE CRIMES WITHOUT A
      CAUTIONARY INSTRUCTION AND WITHOUT MAKING THE
      INSTRUCTIONS PART OF THE RECORD.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Griffin*, No. 141530 (Mich. Ct. App. Dec. 21, 1993) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan

Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard

order.  *See People v. Griffin*, 446 Mich. 875, 522 N.W.2d 636 (1994).

5.     On July 15, 1996, petitioner filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, claiming that the court erred in allowing admission of a

witness's preliminary examination testimony, the trial court improperly scored his sentencing

guidelines, ineffective assistance of counsel, and actual innocence.  The trial court denied the motion

on December 18, 2002, finding that petitioner's sentencing claims were barred by Rule 6.508(D)(2)

because they were raised on petitioner's direct appeal, and that the remaining claims were barred

by Rule 6.508(D)(3) because petitioner failed to establish good cause for failing to raise them on

direct appeal.  *See People v. Griffin*, No. 90-0584 (Wayne County, Mich., Cir. Ct. Dec. 18, 2002).

3

Petitioner sought leave to appeal in both the Michigan Court of Appeals and Michigan Supreme Court, raising the following claims:

I.     THE TRIAL COURT ABUSED ITS DISCRETION DURING 6.500 PROCEEDINGS BY FAILING TO CONSIDER DEFENDANT'S CLAIM THAT HIS SENTENCING GUIDELINES WERE MISCALCULATED, THEREBY DENYING DEFENDANT HIS STATE AND FEDERAL RIGHT TO ACCESS TO THE COURTS AND DUE PROCESS.

II.    THE TRIAL COURT ABUSED ITS DISCRETION DURING 6.500 PROCEEDINGS BY FAILING TO CONDUCT AN EVIDENTIARY HEARING AFTER HAVING ORDERED A HEARING ON NEWLY DISCOVERED EVIDENCE THEREBY IMPEDING DEFENDANT'S STATE AND FEDERAL RIGHTS TO ACCESS TO THE COURTS AND DUE PROCESS.

III.   DEFENDANT WAS DENIED A FULL AND FAIR APPEAL AS OF RIGHT WHERE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE US CONSTITUTION AND ART 1, § 20 OF THE MICHIGAN CONSTITUTION. MOREOVER, DEFENDANT'S APPEAL AS OF RIGHT WAS NOT CONDUCTED IN ACCORD WITH DUE PROCESS OF LAW THUS A NEW APPEAL OF RIGHT IS REQUIRED.

IV.    DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL WAS OPERATING UNDER A HEAVY CRACK COCAINE ADDICTION WHILE REPRESENTING DEFENDANT WHICH HINDERED HIS PERFORMANCE. SPECIFICALLY, COUNSEL MISLEAD THE TRIAL COURT BY STATING THAT HE WOULD SUBPOENA DEFENDANT'S MEDICAL RECORDS BUT FAILED TO DO SO, FAILED TO INTERVIEW AND PRESENT MR. KENNETH STRAUTHERS AS A WITNESS, FAILED TO OBJECT TO THE IMPROPER SCORING OF DEFENDANT'S SENTENCING GUIDELINES AND FAILING TO PRESENT A VIABLE MERE PRESENCE DEFENSE, THEREBY DENYING THE DEFENDANT HIS RIGHT TO A FAIR TRIAL.  USCA VI; ART 1, § 20 OF THE MICHIGAN CONSTITUTION.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Griffin*, 472 Mich. 851, 691 N.W.2d 456

4

(2005); *People v. Griffin*, No. 252589 (Mich. Ct. App. Jan. 27, 2005).

6.     Petitioner filed a second motion for relief from judgment in the trial court on

September 9, 2005, claiming that he had newly discovered evidence of innocence, and that his

sentence violated his Sixth Amendment right to a jury under *Blakely v. Washington*, 542 U.S. 296

(2004).  On December 15, 2005, the trial court denied the motion as a prohibited second motion

under Rule 6.502(G).  *See People v. Griffin*, No. 90-008584-01 (Wayne County, Mich., Cir. Ct. Dec.

15, 2005).  Petitioner sought leave to appeal in the Michigan Court of Appeals and Michigan

Supreme Court, raising the following claims:

I.     DEFENDANT MUST BE GRANTED A NEW TRIAL BASED ON THE
NEWLY DISCOVERED EVIDENCE WHERE REASONABLE
EXPECTATIONS OF LENIENCY FOR THE STAR PROSECUTION
WITNESSES' TESTIMONY WERE NOT REVEALED TO THE JURY
AND FALSE IMPRESSIONS CONCERNING THE LENIENCY
EXPECTATIONS WERE NOT CORRECTED AND PROOF OF THESE
MOTIVATIONS FOR THE WITNESSES' TESTIMONY WAS NOT
AVAILABLE AT THE TIME OF TRIAL; WHERE WITNESSES
OFFERED PERJURED TESTIMONY AT TRIAL; AND WHERE
DEFENDANT HAS, SUBSEQUENT TO TRIAL, DISCOVERED THE
EXISTENCE OF A WITNESS WHO COULD EXONERATE HIM.

II.    DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE
SENTENCE WAS ENHANCED ON THE BASIS OF FACTS NOT
SPECIFICALLY FOUND BY A JURY AT TRIAL, IN VIOLATION OF
DEFENDANT'S RIGHT TO TRIAL, AS GUARANTEED BY THE SIXTH
AND FOURTEENTH AMENDMENTS.

III.   DEFENDANT IS ENTITLED TO RELIEF FROM JUDGMENT WHERE
THERE IS GOOD CAUSE FOR NOT RAISING THE ISSUE
PREVIOUSLY, THE ISSUE INVOLVES THE DENIAL OF
CONSTITUTIONAL RIGHTS, THE ISSUES INVOLVE NEWLY
DISCOVERED EVIDENCE AND A RETROACTIVE CHANGE IN THE
LAW, WHICH ALLOWED FOR A SUBSEQUENT MOTION UNDER
MCR 6.502(G)(2), AND MANIFEST INJUSTICE HAS RESULTED.

The supreme court and court of appeals denied petitioner's applications for leave to appeal based

5

on Rule 6.502(G)(2).  *See People v. Griffin*, 480 Mich. 854, 737 N.W.2d 694 (2007); *People v.*

*Griffin*, No. 271238 (Mich. Ct. App. Sept. 10, 2007).

   7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on October 16, 2007.  As grounds for the writ of habeas corpus, he raises five claims:

   I. THE WAYNE COUNTY CIRCUIT COURT MISHANDLED THE
MOTION FOR RELIEF FROM JUDGMENT AFTER [IT] HAD BEEN
PENDING IN THE CIRCUIT COURT FOR ALMOST SIX AND ONE-
HALF YEARS. AFTER GRANTING AN EVIDENTIARY HEARING ON
THE ACTUAL INNOCENCE AND INEFFECTIVE ASSISTANCE OF
COUNSEL ALMOST THREE AND ONE-HALF YEARS EARLIER,
WITH[OUT] HEARING DENIED THE REQUEST FOR RELIEF ON
FALSE ASSUMPTIONS AND INAPPROPRIATE APPLICATION OF THE
ISSUE PRECLUSION DOCTRINE.

   II. DEFENDANT WAS DENIED DUE PROCESS OF THE LAW BECAUSE
OF THE REPREHENSIBLE CONDUCT OF THE PROSECUTOR IN THIS
CASE.

   III. THE LOWER COURT AND THE MICHIGAN COURT OF APPEALS
ABUSED ITS DISCRETION BY NOT ADHERING TO PRECEDENT
OPINION IN LAMARBE AND GATEWOOD, MANDATING THAT
RESENTENCING IS REQUIRED WHEN THE SENTENCE IS BASED
SOLELY ON INACCURATE INFORMATION.  APPELLANT WAS
DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW
UNDER MICH. CONST. ARTIC[LE] I, SEC.2, WHERE THIS COURT
FAILED TO FOLLOW MCR 7.215(C)(2), (J)(1).

   IV. DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL AT (A) SENTENCING AND
(B) DURING TRIAL.

   V. THE MICHIGAN STATE COURT SYSTEM HAS DENIED DEFENDANT
HIS DUE PROCESS RIGHT TO ESTABLISH HIS INNOCENCE OF THE
CRIMES AND THEREBY ESTABLISH A GATEWAY TO PASS BY ANY
ALLEGED PROCEDURAL DEFAULT.

   8. Respondent filed his answer on April 21, 2008.  He contends that petitioner's first

and fifth claims are not cognizable on habeas review, and that petitioner's remaining claims are

6

barred by petitioner's procedural default in the state courts and without merit.

        9.     Petitioner filed a reply to respondent's answer on May 27, 2008.

B.    *Factual Background Underlying Petitioner's Conviction*

        The facts underlying petitioner's conviction were accurately summarized in petitioner's brief

in the Michigan Court of Appeals on direct appeal:

> The deceased, Norris Brown, died of a single shotgun wound to the upper chest (Vol I, pp. 187-197). There was no evidence of close range firing (Vol I, p. 198). The deceased had ingested cocaine prior to his death (Vol I, p. 201). The assistant medical examiner was unable to determine the kind of gun used to inflict the fatal wound (Vol I, p. 207).
>
> Responding officers found the deceased laying face-up in the front doorway of 8005 Lawton, suffering from a gunshot wound (Vol II, p. 352). Crack cocaine was removed from the deceased's clothing (Vol II, p. 358).
>
> Evidence technicians found little droplets of blood just outside the front of 8005 Lawton, Detroit (Vol II, pp. 231, 234). A pool of blood was found in the foyer (Vol II, pp. 233-234).
>
> SHAWN DANIELS testified that sometime after the shooting he heard a conversation between Defendant Griffin and Chris (Vol II, 262-263). When Daniels first asked Defendant Griffin if he knew anything about the shooting, he said he did not (Vol II, p. 264). Later in the evening, Daniels allegedly overheard Defendant Griffin say he shot the guy (Vol II, pp. 268, 284). Chris then described what happened during the shooting (Vol II, pp. 284-285). Daniels admitted that prior to the conversation, he had ingested four of the five packs of heroin during the day and drank some forty ounce beers (Vol II, pp. 278-279, 319). He further admitted lying to the police while in custody and eventually told the police about the conversation because they pressured and threatened him into telling (Vol II, pp. 283, 300, 308). When he eventually told the police about the conversation, he was high on heroin, cocaine and alcohol (Vol II, p. 274). Daniels was a convicted felon who was on probation (Vol II, pp. 298-299). He admitted being a heroin and cocaine addict (Vol II, p. 318). The police told Daniels that if he made a statement implicating Defendant Griffin, he would be released (Vol II, p. 325). Daniels admitted implicating the Defendant so he could be released (Vol II, pp. 325-326). Finally, Daniel's conceded that Chris may have said he was the one who did the shooting (Vol II, p. 322).
>
> The responding officers arrested a DeWAYNE HARRIS based on information that he was seen at the scene with a shotgun (Vol II, pp. 368-369, 373). Harris had blood on his shorts when he was arrested (Vol II, p. 373; Vol III, p. 615).
>
> LINDA JONES, a neighbor to the Lawton house saw two young men, one with a shotgun, standing outside the front door (Vol II, pp. 392-396). Jones was

about seventy (70) feet away from the men looking out a bedroom window (Vol III, pp. 403, 477). Jones saw a person walk down the inside apartment stairs. This man was shot (Vol III, pp. 400-409). The two men ran off, but one returned to the front door (Vol II, p. 410). This man went through the deceased's pockets and removed or put something in it (Vol II, pp. 411-412). Jones identified Defendant Griffin as the shooter (Vol II, p. 426). The shooter turned just before firing the fatal shot (Vol III, p. 461). At a photographic array, Jones told the police that Defendant Griffin "looks like" the person who was holding the weapon (Vol III, p. 471).

GARY HOLT, a friend of the deceased, overheard Defendant Griffin ("Ren") say he was going to do a stick up, but could not get inside the house to do it (Vol III, p. 513). When the person refused to lay down when ordered to, Defendant shot him (Vol III, p. 514). Later, Holt found out that Norris Brown had been shot, so he called the police and told them what he overheard (Vol III, pp. 518, 522).

The officer in charge, DONALD STAWIASZ, testified that he presented a not-in-custody warrant to a prosecutor who signed the recommendation and was reviewed by a judge, before being issued for Defendant Griffin (Vol III, pp. 550-551). In July, after Defendant was arrested, Stawaisz interrogated him and took a statement. In this statement, Defendant Griffin said a friend Darius Turner came to his house. Turner complained that a guy on Lawton "kept fucking with him" and asked Defendant to go to the house to "holler at the guys." They picked up Chris and another unknown man and drove around drinking. Inside the car was a riot pump shotgun. The men decided to "fuck up" the guys Turner had a disagreement with. Chris put the shotgun in his pant leg and walked up Lawton with Defendant. Defendant said he was intoxicated at the time. Both men entered the building, but could not locate the man they were looking for. As they were leaving, Defendant recognized the man they were looking for and took the gun from Chris. When he reached into his waistband, and put his hand on a handgun, Defendant shot him. Both men ran to Turner's car nearby. Later, Chris said he took $40 off the man who was shot. Defendant Griffin denied planning to shoot the deceased.

YVONNE BALDWIN, Defendant's girlfriend, spoke to him about Brown's death in June or July (Vol III, pp. 623-624). After questioning him several times and not receiving an answer, Defendant Griffin eventually told Baldwin that a guy had got shot (Vol III, pp. 636-638). Defendant never said who shot the person or how he got shot (Vol III, p. 639). When Baldwin was informed by the trial judge that she could be charged with perjury after admitting she previously lied at the preliminary examination, she asserted her Fifth Amendment right not to testify (Vol IV, p. 654). Ultimately, the trial court struck all of her testimony (Vol IV, pp. 770, 813). A motion for mistrial was denied (Vol IV, p. 770). Over objection, the trial judge allowed the prosecution to have Ms. Baldwin's preliminary examination testimony read to the jury (Vol IV, pp. 807-809). In this previous testimony Baldwin said Defendant Griffin told her he had shot him, they went there to stick him up and took some money (Vol IV, pp. 819-821).

DARIUS TURNER, was driving his car when he picked up Defendant Griffin and two other men, one identified as Chris (Vol IV, pp. 667-671). Turner saw

8

Defendant Griffin hand Chris a shotgun in the car (Vol IV, p. 674). Defendant Griffin asked a person on the street where he could get some cocaine (Vol IV, p. 680). After driving around, Defendant Griffin and Chris exited the car. Chris had the shotgun in his jogging pants (Vol IV, pp. 684, 713). The two men disappeared down an alley (Vol IV, p. 685). About 15 minutes later, both men returned to the car, with Chris saying "I got him" (Vol IV, pp. 687, 694). Turner saw Chris with money in his hand (Vol IV, p. 695). Turner denied having a "beef" with anyone that day (Vol IV, p. 699).

THOMAS McKINNEY, was standing in front of a nearby store when the shooting occurred (Vol IV, pp. 723-726). A car pulled up and Darius Turner asked "who's selling dope upstairs" (Vol IV, pp. 727, 729). Later, while standing on the porch of his house, McKinney heard a shot come from across the street (Vol IV, p. 735). When McKinney looked, he saw one man with a shotgun saying "come on" while another man was going through the pockets of a man lying in the doorway (Vol IV, p. 736). The men removed "some papers, money, or something" (Vol IV, p. 737). McKinney could not identify the two men. McKinney said that the man who was shot, "C" was selling drugs form the building (Vol IV, p. 742).

The defense called LUCILLE JONES, the girlfriend of DeWayne Harris, who testified that in June Harris came in a taxi cab to her house (Vol IV, p. 858). Jones testified that Harris got blood on his clothing while having sex with her (Vol V, pp. 856-857).

GINA WILLIAMS, testified at trial consistent with her testimony at the Walker hearing concerning the arrest of Defendant Griffin (Vol V, pp. 860-884).

Defendant Griffin took the stand and testified that on June 30, 1990, Darius Turner came by his house on Appoline (Vol IV, pp. 889-890). Defendant and Turner drove in Turner's car to Linwood and Lawton because a person was "going to jump" Turner (Vol V, pp. 891, 933). Defendant went to support Turner if there was a fight (Vol V, p. 893). After Turner spoke with this person, they left to pick up Chris (Vol V, p. 894). Chris and a[n] unidentified black male walked to the car and put something wrapped up in the trunk (Vol V, p. 897). Chris told Defendant Griffin that it was a rifle and that he wanted to sell it (Vol V, pp. 897-898). After having four or five drinks of cognac, Defendant Griffin became drunk (Vol V, pp. 899-900). When they stopped to purchase some crack cocaine, Chris asked the seller where he could sell the gun (Vol V, p. 901). When they were directed to a house on Lawton, Defendant, Darius and Chris exited the car, with Chris concealing the gun in his pant leg (Vol V, pp. 903-904). Defendant Griffin heard some arguing involving Chris and another unknown voice, followed by two gunshots (Vol V, p. 909). At the car, Chris handed the rifle to Defendant Griffin and told him to put i[t] under the seat, which he did (Vol V, pp. 910, 965). Defendant said he got the impression that Chris had shot someone, so he got nervous and panicked (Vol V, p. 911). Defendant Griffin denied shooting or trying to rob anyone (Vol V, p. 912). He further denied telling anyone that he had shot someone (Vol V, p. 914). Defendant explained how the police beat him when he was arrested (Vol V, pp. 917-919). At Police Headquarters he gave two written statements, the first consistent with his trial testimony (Vol V,

pp. 922-923).  After the police showed him witness statements and told him he did not believe his first statement, Defendant gave a second statement admitting to the murder when the officer said he would get only ten years (Vol V, pp. 926, 945).

On redirect, the following questions and answers occurred:

Q.  All right.  Did Investigator Stawiasz ever tell you that he was going to reduce this agreement that you and he made about the ten years to writing for you?

A.  No.

Q.  Did you expect him to?

A.  I ain't never been through nothing like this.  I thought he was going to go just to talk to the prosecutor like he said.

Q.  Did you think he would live up to his word?  (Vol V, p. 978).

When the prosecutor asked to be allowed to cross examine Defendant regarding his response, the trial judge left it to the attorney's [sic] to resolve the issue without ruling (Vol I, pp. 983-986).  The attorneys agreed to allow the prosecution to ask Defendant whether on three previous occasions in the last few years, he had been advised of his rights and questioned by the police (Vol V, pp. 986-987).  Before the jury, the question was asked and Defendant Griffin answered "yes" (Vol V, pp. 988-989).  The prosecutor argued this evidence in his rebuttal arguments (Vol V, p. 1050)

Rebuttal witness, Darrell Martin, testified that he was assigned to the Repeat Offender Unit of the Detroit Police Department (Vol V, p. 989).  Martin testified that the arrest of Defendant Griffin was "without incident" (Vol V, p. 991).  Martin denied that the arresting officers physically abused the Defendant (Vol V, p. 994).

Def.-Appellant's Br. on Appeal, in *People v. Griffin*, No. 141530 (Mich. Ct. App), at 1-10.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or
        (2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

11

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Post Conviction Relief Claims (Claims I & V)*

In his first and fifth habeas claims, petitioner challenges the state trial court's handling of his post-conviction motions. In Claim I, petitioner argues that the trial court denied him his right to due process by not ruling on the motion in a timely fashion, failing to hold an evidentiary hearing, and improperly determining that his sentencing claims had previously been raised on direct appeal and thus were barred by Rule 6.508(D)(2). In his fifth claim, petitioner contends that he was denied his right to due process because the Michigan state court system has failed to develop fact-finding

12

procedures for a defendant to establish his innocence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

Petitioner's claims are not cognizable on habeas review.  Because a federal habeas court may not correct a state court's misapplication of its own law, *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Beck v. Washington*, 369 U.S. 541, 544 (1969), a state trial court's denial of a motion for a new trial based upon newly discovered evidence is not a ground for habeas relief.  As one court has explained:

> The criteria for a trial court in granting or denying a new trial are matters of state law.  As such an incorrect application would not be grounds for federal habeas corpus relief, unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

*Ward v. Wolff*, 499 F. Supp. 1129, 1131 (D. Nev. 1980) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also, Buford v. Perini*, No. 85-3862, 1986 WL 18098, at *3 (6th Cir. Oct. 10, 1986) ("[T]he denial of petitioner's post-trial motion [for new trial based upon newly discovered evidence] is simply a matter of state law which cannot serve as a basis for federal habeas corpus relief."); *Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982).  Nor does the trial court's failure to hold an evidentiary hearing on petitioner's newly discovered evidence claim in connection with his postconviction motion warrant habeas relief.  Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).  As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction

13

proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). In short, petitioner's challenges to the state court post-conviction proceedings are not cognizable on habeas review. Accordingly, the court should conclude that petitioner is not entitled to habeas relief on these claims.

E.     *Perjured Testimony (Claim II)*

Petitioner next contends that he was denied a fair trial because the prosecutor relied on perjured testimony in securing his conviction. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

14

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269. It is equally well established, however, that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). Thus, to succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show

that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

2.      *Analysis*

Petitioner's perjury claim is based on the trial testimony of Darion Turner and Shawn Daniels, and their subsequent affidavits recanting their trial testimony. At trial Daniels, who did not witness the shooting, testified that he gave two statements to the police. In the first, he did not implicate petitioner. In the second, he indicated that he overheard petitioner say that he had "shot that guy." However, Daniels also testified that the only reason that he gave the second statement was because he was threatened by the police that he would be charged as an accessory if he did not give a statement. He also conceded that he was intoxicated by alcohol and heroin both at the time he overheard petitioner make the statement and at the time he gave his statement to the police. Daniels further testified that immediately after petitioner said that he "shot that guy," petitioner left the room and Chris stated all the details; he conceded that it was possible that it could have been Chris who stated that he shot the victim. *See* Trial Tr., Vol. II, at 316-26. Turner testified that he picked up petitioner, Chris, and another man. Petitioner handed Chris a shotgun, and they drove around for some time. Petitioner asked a person on the street where they could get some drugs, and they drove to the location given to them. Petitioner and Chris exited the car and disappeared down an alley. Chris had the shotgun in his jogging pants. About 15 minutes later, the two returned; petitioner was carrying the shotgun and Chris had money in his hand, and Chris said "I got him." *See* Trial Tr., Vol. IV, at 667-95.

16

On March 20, 1996, Turner executed an affidavit in which he avers that "during the trial in this case, I gave false and perjured testimony regarding the shooting incident." Pet., Appx. J, Aff. of Darion E. Turner, ¶ 4 [hereinafter "Turner Aff."]. He further avers that on the date of the shooting he was "intoxicated to a point whereby [he] did not know what happened;" that he "gave two statements to the Police Officers from the Detroit Police Department. However, during my second statement, I was advised that if I did not provide a name of someone in the shooting, I would be charged with murder and sent to prison;" and that his "second statement was false in all respects against Mr. Griffin, and . . . was manufactured, coerced, and submitted under physical and mental duress from the Detroit Police Officers involved in this case." *Id.*, ¶¶ 5-7. Similarly, on April 11, 1996, Daniels executed an affidavit similarly averring that his testimony at trial was false; he was intoxicated on the day of the shooting; and his statement and testimony were the result of police coercion, threats, and promises of leniency. *See* Pet., Appx. J., Aff. of Shawn Daniels, ¶¶ 4-9 [hereinafter "Daniels Aff."].

These affidavits are insufficient to establish that petitioner's conviction was based on police-induced perjury, because they are inherently not credible. Long-delayed affidavits, like those offered here, which seeks to exonerate a petitioner and shift the blame for the crime to another person are "treated with a fair degree of skepticism." *Herrera v. Collins,* 506 U.S. 390, 423 (1993). Recanting affidavits and witnesses are likewise viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991); *see also Byrd v. Collins,* 209 F.3d 486, 508 n. 16 (6th Cir. 2000). The affidavits submitted by petitioner do not explain why the witnesses waited nearly five years after petitioner's trial to come forward. *See Lewis v. Smith,* 110 Fed. Appx. 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting affidavit

17

made two years after petitioner's trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993)(recantation more than four years after trial testimony was dubious). Furthermore, it is highly suspicious that the recantations came years after the witnesses had received the supposed benefit from testifying against petitioner–placement in a drug treatment center and leniency with respect to their own crimes–and had nothing to lose by recanting. *See Tirado v. Senkowski*, 367 F. Supp. 2d 477, 489 (W.D.N.Y. 2005).

Turner's affidavit is of dubious credibility for another reason. Turner asserts that he gave two statements to the police, but the record does not support this contention. At trial, only Daniels testified that he made two statements; Turner testified to only a single statement. More importantly, at trial Turner testified that his own attorney was with him during the interview in which he gave the statement implicating petitioner. *See* Trial Tr., Vol. IV, at 689-91. Turner's averments that he was subjected to "physical and mental duress" during the interview is untenable in light of counsel's presence at the interview.

Further, Daniels's affidavit provides no basis for relief even if it did not suffer from these credibility problems. Apart from his current claim on the underlying factual question of whether petitioner admitted to shooting the victim, everything that Daniels avers in his affidavit regarding the taking of his statement was brought out at trial. Specifically, as set forth above, Daniels testified that he gave a first statement in which he did not implicate petitioner, and that his second statement was given because he was pressured to give the statement and implicate petitioner, and because he wanted to avoid being charged with a crime. Thus, the jury had before it all the facts necessary to determine whether Daniel's second statement and trial testimony were credible. By finding petitioner guilty, the jury either rejected Daniel's testimony that he had been coerced into

18

implicating petitioner or concluded that, even without the statement, there was sufficient evidence to prove petitioner's guilt beyond a reasonable doubt. *See Pope v. Netherland*, 113 F.3d 1364, 1371 (4th Cir. 1997) (habeas relief not warranted based on alleged perjury or witness regarding the extent of her involvement with drugs and alcohol where facts relating to her involvement were presented to the jury); *Hamilton v. Herbert*, No. 01 CV 1703, 2004 WL 86413, at *17 (E.D.N.Y. Jan. 16, 2004) (where witness had implicated petitioner prior to trial, then recanted, and then recanted her recantation and testified at trial, petitioner was not entitled to habeas relief on basis of perjured testimony claim; prosecutor and jury could have concluded that the recantation, rather than testimony and initial statement, was not credible, and jury had before it all the facts necessary to make this determination); *Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001) ("The presentation of a witness who may have contradicted herself did not deprive petitioner of due process where the jury heard all of the versions of the witness' stories and the witness was thoroughly impeached.").

Because petitioner has failed to present any credible evidence that Daniels or Turner perjured themselves at trial and that state officials knew of the perjury, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Sentencing Claims (Claim III)*

Petitioner next raises several challenges to his sentence. Specifically, he contends that the trial court incorrectly scored Prior Record Variable 7 (PRV7) and Offense Variable 3 (OV3) in computing his sentence under the Michigan sentencing guidelines. He argues that this scoring was based on inaccurate information, and that the court of appeals erred in affirming his sentence because it failed to accord *stare decisis* effect to prior Michigan cases. The Court should conclude

19

that petitioner is not entitled to habeas relief on these claims.

To the extent petitioner contends that the guidelines were improperly scored and that the Michigan Court of Appeals failed to correctly apply Michigan law to his sentencing claims, petitioner's claims are not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law that is not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

To the extent petitioner contends that his sentence was based on inaccurate information, his claim is without merit. Petitioner's claim invokes the rule established in *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972). In both of those cases, "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S.

at 740-41.  It is well established, however, that a *Tucker* violation arises only where the improper information  "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985).  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447).  Thus, to be entitled to habeas relief on this claim  petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Here, petitioner contends that the trial court erred in scoring Offense Variable 3 at 50 points based on premeditated killing, rather than at 25 points for an unpremeditated killing.  However, petitioner offers nothing to show that this determination was based on any inaccurate information. It is true that the jury convicted petitioner of second degree murder, rather than first degree murder which involves premeditation.  This does not mean, as a factual matter, that petitioner did not act with premeditation.  The trial court was permitted to determine this matter independent of the jury findings when choosing a sentence within the statutorily prescribed range.  In any event, petitioner does not point to any particular facts found by the trial court which were inaccurate, but only to the legal conclusion that the facts supported the imposition of 50 points under OV3.  Petitioner also contends that the trial court erred in scoring Prior Record Variable 7 at 10 points for having a concurrent or subsequent conviction.  Petitioner argues that the second conviction used to score this variable was the felony firearm conviction, which under Michigan law was not proper. *See* MICH.

COMP. LAWS 777.57(2)(b).  Again, however, this claim does not assert that the trial judge relied on any false factual statements; rather, he complains of a legal error in the application of PRV7.  Thus, petitioner has failed to show that the trial court relied on any materially false information in imposing sentence.

Further, as noted above, a *Tucker* violation arises only where the improper information "actually served as the basis for the sentence."  *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner*, 341 F.3d at 639;  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447).  Here, even if there was inaccurate information used to score the guidelines, petitioner cannot show that the inaccurate information was relied upon by the trial court.  A review of the sentencing transcript shows that the trial judge did not give explicit consideration to any particular guideline factor or set of facts.  Rather the court's sentence was based on the general circumstances of the crime and the effect it had on the victim's family, as well as petitioner's prior record.  *See* Sentence Tr., at 13-16.  Thus, petitioner has failed to show either that there was materially false information, or that the information was relied upon at sentencing.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his sentencing claims.

G.    *Ineffective Assistance of Counsel (Claim IV)*

Petitioner next contends that his counsel was ineffective in a number or respects. Specifically, petitioner contends that counsel was ineffective for failing to interview and present the testimony of Kenneth Strauthers; failing to obtain medical records to support his claim that his

confession was extracted through the use of physical coercion; failing to seek suppression of his statement on Fourth Amendment grounds; and failing to object at sentencing. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

23

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

  2.  *Analysis*

    *a. Failure to Interview/Present Kenneth Strauthers*

  Petitioner first contends that counsel was ineffective for failing to interview and present the testimony of Kenneth Ray Strauthers.  In an affidavit executed in 1996–over five years after petitioner's conviction–Strauthers avers that when petitioner arrived in the car with the other people, petitioner went into a store and bought beer for himself and Strauthers.  He also avers that he and petitioner stood in front of the store drinking when they heard shots, and that at all times petitioner was with him in front of the store.  *See* Pet., Ex. J., Aff. of Kenneth Ray Strauthers, ¶¶ 6-14 [hereinafter "Strauthers Aff."].  Strauthers also avers that he was available to testify, but that petitioner's lawyer never came to question him.  *See id*., ¶ 16.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

  As with the affidavits of Turner and Daniels, Strauthers's late-filed affidavit is inherently incredible.  Strauthers, who apparently went by the name Ray-Ray, was the person of whom petitioner inquired about where to sell the gun or obtain drugs.  *See* Trial Tr., Vol. IV, at 726-27 (testimony of Thomas McKinney); *id*., Vol. V, at 900-01 (testimony of petitioner).  Petitioner himself testified that they then drove away from Strauthers at least some distance, and McKinney confirmed that the car drove away from Ray-Ray and that Ray-Ray himself walked down the street. *See id*., Vol. IV, at 730; Vol. V, at 902.  More fundamentally, Strauthers's account differs dramatically from the account given by petitioner at trial.  Strauthers avers that petitioner went into the store and bought them both beer, and that the two of them stood outside the store drinking the

beer, that the victim passed by "a few minutes later," and that the shots occurred "a few minutes" after that. *See* Strauthers Aff., ¶¶ 8-10. Petitioner, on the contrary, testified that he went into the store and bought cigarettes, passed the victim immediately after exiting the store and saw him enter the stairway, and heard arguing a few second later followed by the shots. *See* Trial Tr., Vol. V, at 906-07, 956-57. Petitioner described a sequence of events separated by seconds, and lasting from start to finish about two minutes. *See id*. at 964. Petitioner also testified only that he had purchased cigarettes, not alcohol, and did not mention the presence of Strauthers or any one else with whom he drank outside of the store. These inconsistencies, coupled with the late nature of the affidavit, render Strauthers's affidavit incredible.

Further, apart from any credibility problems with the affidavit, petitioner cannot show that counsel was deficient or that he was prejudiced by counsel's performance. With respect to counsel's performance, petitioner does not allege that he told counsel either about standing outside the store drinking beer or about Strauthers and the record–in particular petitioner's own testimony at trial–suggests that petitioner did not do so. Rather, petitioner contends only that counsel should have investigated Strauthers after some testimony was elicited at trial concerning "Ray-Ray." However, the testimony at trial about Ray-Ray's (i.e., Strauthers's) involvement was limited to identifying him as the man whom the people driving in the car asked for information about where to sell the shotgun or buy drugs. Thus, absent any additional information from petitioner concerning Strauthers's involvement, counsel had no reason to conduct any further investigation of this witness. "An attorney's failure to investigate 'cannot be charged as a claim of ineffective assistance of counsel when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself.'" *United States v. King*, 936

25

F.2d 477, (10th Cir. 1991) (quoting *United States v. Miller*, 907 F.2d 994, 999 (10th Cir. 1990)); *see also*, *Thomas v. McLemore*, No. 00-CV-71673, 2001 WL 561216, at *9-*10 (E.D. Mich. Mar. 30, 2001) (Borman, J.).

With respect to prejudice, there is far from a "reasonably probability" that counsel would have been able to secure Strauthers's supposedly favorable testimony. Although Strauthers avers that he "was available to testify to the facts of the shooting and Randle Griffin's whereabouts when the shooting occurred," Strauthers Aff., ¶ 16, he also avers that "[a]t the time of this incident, I did not want to get involved due to my status on parole and I could have been violated for association." *Id.*, ¶ 17. Given Strauthers's contemporaneous concern for his own possible reimprisonment for violating his parole, Strauthers's later avowed willingness to testify is not credible; it is more likely that Strauthers would have been uncooperative or invoked his Fifth Amendment privilege against self-incrimination if called at trial. Further, in light of the great inconsistencies between petitioner's testimony and Strauthers's purported testimony, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had Strauthers testified at trial. *See Ford v. Shofield*, 488 F. Supp. 2d 1258, 1351-52 (N.D. Ga. 2007), *aff'd*, 546 F.3d 1326 (11th Cir. 2008).

For these reasons, that Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim relating to counsel's failure to interview and call Strauthers.

### b. Failure to Obtain Medical Records

Petitioner also contends that counsel was ineffective for failing to obtain medical records to support his claim that he was physically assaulted by the police, and that his statement was a result of this assault. However, the medical records petitioner submits in support of this claim do not

support his assertion that he was assaulted by the police, and thus he cannot show that counsel was deficient or that he was prejudiced by counsel's failure to obtain his medical records.

At a pretrial hearing, Gina Williams testified that she was with petitioner when he was arrested. Although she was not in the same room as petitioner and the arresting officers, she heard noises that sounded like fighting, and which lasted for about 30-45 minutes. *See* Evid. Hr'g Tr., dated 12/6/90, at 8-9. When she saw petitioner at the police station later, his face was swollen. *See id.* at 11. Williams testified similarly at trial. *See* Trial Tr., Vol. V, at 864-66. At a second pretrial hearing, petitioner testified that as he was laying on the floor at the time of the arrest, the officers put a gun to his head, "stomped" on his head, and repeatedly hit and kicked him. He testified that he sustained injuries to his knees, face, and wrist. *See* Mot. to Suppress Hr'g Tr., dated 1/18/91, at 33, 42-43. Petitioner testified similarly at trial. *See* Trial Tr., Vol. V, at 917-19. The medical records submitted by petitioner do not corroborate petitioner's claim that he was extensively beaten by the officers over a long period of time.

On the contrary, the Wayne County Jail Physical Assessment and Medical History dated August 1, 1990, indicates that petitioner reported numbness in his left hand due to the handcuffs. However, no other injuries were reported. *See* Pet., Appx. L. A medical report dated November 15, 1990, indicates a left carpal bone fracture. *See id.* A later report dated November 20, 1990, indicates a right metacarpal fracture. *See id.* These latter two reports, however, significantly post-date petitioner's arrest and statement to the police, and it is thus far from clear that these injuries arose from the arrest, rather than from some other cause during petitioner's incarceration. In any event, the medical records as a whole show, at most, that the police may have put the handcuffs on petitioner too tightly at the time of his arrest. They do not corroborate petitioner's assertion that he

was beaten by the police.

Further, even assuming that petitioner could show that the police used excessive force in effectuating his arrest, this alone would not entitle him to suppression of his statement. Petitioner's statement was given several hours later at the police station, and he makes no allegation that he was physically threatened or assaulted while at the station. Nor does he allege that any of the arresting officers attempted to elicit a statement from him at the time of the arrest or that the interrogating officers were involved in the arrest. He has thus failed to establish a causal connection between the allegedly excessive force used to effectuate his arrest and the subsequent statement he gave at the police station. *See Hardin v. McDonough*, No. 3:06cv123, 2007 WL 1696105, at *15 (N.D. Fla. June 11, 2007). In light of the lapse of time, change of location, and different circumstances between the arrest and petitioner's statement, suppression of the statement would not have been required even if petitioner could show that the officers used excessive force. *See Watson v. DeTella*, 122 F.3d 450, 455 (7th Cir. 1997); *Hardin*, 2007 WL 1696105, at *15; *United States v. Egipciaco*, 389 F. Supp. 2d 520, 525 (S.D.N.Y. 2005). Because of this, and because the medical records do not, in any event, support petitioner's excessive force claim, he cannot show a reasonable probability that a motion to suppress would have been granted had counsel obtained these records. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. *Failure to Challenge Statement on Fourth Amendment Grounds*

Petitioner next contends that his counsel was failing to seek suppression of his statement on Fourth Amendment grounds. He argues that the police violated the Fourth Amendment "knock and announce" requirement when executing the warrant for his arrest, and that his subsequent statement was a fruit of this illegal arrest and thus should have been suppressed. Even assuming, however, that

28

there was a Fourth Amendment knock and announce violation, however, petitioner cannot show that he was prejudiced by counsel's failure to seek suppression, because suppression was not an appropriate remedy. Both the United States and Michigan Supreme Courts have explicitly held that suppression is not an appropriate remedy for violation of the knock and announce requirement. *See Hudson v. Michigan*, 547 U.S. 586, 590-99 (2006); *People v. Stevens*, 460 Mich. 626, 597 N.W.2d 53 (1999). Thus, petitioner cannot show a reasonable probability that a motion to suppress his statements based on a violation of the knock and announce rule would have succeeded. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Failure to Object at Sentencing

Finally, petitioner contends that counsel was ineffective for failing to object at sentencing to the scoring of OV3 and PRV7. However, as discussed above in connection with petitioner's sentencing claims, it is clear that the trial judge's choice of sentence was not based on any particular scoring of the guidelines, but on the circumstances of the crime and petitioner's prior history. *See* Sentence Tr., at 13-16. Based on the trial judge's comments in imposing sentence, there is not a reasonable probability that a different sentence would have been imposed even if counsel had objected to the scoring of OV3 and PRV7. *See Logan v. Bell*, No. 2:06-13879, 2007 WL 1725400, at *4 (E.D. Mich. June 13, 2007) (Cohn, J.).

### H.   Conclusion

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner's

motion for an evidentiary hearing (docket #13) and petitioner's motion for appointment of a blood spatter expert (docket #17).

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/27/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on January 27, 2009.

s/Eddrey Butts
Case Manager