UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDALE GRIFFIN,

    Petitioner,

                                                         Case Number 07-CV-14402

v.                                                     Honorable Thomas L. Ludington

LINDA METRISH,

    Respondent.

_____/

**ORDER DENYING MOTION FOR RELIEF FROM FORMER JUDGMENT**

A single shotgun blast to the chest killed Norris Brown. The State of Michigan charged Petitioner Randale Griffin for the murder of Mr. Brown. The prosecution's theory of the case was that Petitioner and another man (identified only as "Chris") planned to rob Mr. Brown, a drug dealer, of his money and drugs. During the robbery, the prosecution contended, Petitioner shot Mr. Brown.

In 1991, Petitioner was tried by a jury for the murder of Mr. Brown, as well as for the possession of a firearm during the commission of a felony. Several persons were called to testify. Mr. Brown's neighbor, Linda Jones, testified that she was about seventy feet away at the time of the shooting. She identified Petitioner as the shooter. A friend of Mr. Brown, Gary Holt, testified that after the shooting he overheard Petitioner state that he planned to "do a stick up, but could not get inside the house to do it. When [Mr. Davis] refused to lay down when ordered to, [Petitioner] shot him." Appellant's Br. at 1–10, *People v. Griffin*, No. 141530 (Mich. Ct. App.), *quoted in* Report & Recommendation 3, ECF 21. The testimony of these two witnesses is not contested.

The testimony of three other witnesses, however, remains hotly contested by Petitioner. First, there is the testimony of Petitioner's girlfriend at the time of the shooting, Yvonne Baldwin. At a preliminary examination, she testified that Petitioner "told her he had shot [Mr. Davis], they went there to stick him up and took some money." *Id.* At trial, however, she offered a different version of events, testifying that Petitioner "never said who shot the person or how he got shot." *Id.* After Ms. Baldwin made this inconsistent statement, the prosecution sought to introduce her prior testimony. The trial judge cautioned Ms. Baldwin that she could be charged with perjury for admitting to lying under oath. Ms. Baldwin responded by invoking her Fifth Amendment right not to testify. Over Petitioner's (continuing) objection, "the trial judge allowed the prosecution to have Ms. Baldwin's preliminary examination testimony read to the jury." *Id.* The testimony of two other witnesses, Shawn Daniels and Darius Turner, also remains hotly contested by Petitioner.

> Daniels, who did not witness the shooting, testified that he gave two statements to the police. In the first, he did not implicate petitioner. In the second, he indicated that he overheard petitioner say that he had "shot that guy." However, Daniels also testified that the only reason that he gave the second statement was because he was threatened by the police that he would be charged as an accessory if he did not give a statement. He also conceded that he was intoxicated by alcohol and heroin both at the time he overheard petitioner make the statement and at the time he gave his statement to the police. Daniels further testified that immediately after petitioner said that he "shot that guy," petitioner left the room and Chris stated all the details; he conceded that it was possible that it could have been Chris who stated that he shot the victim.
>
> Turner testified that he picked up petitioner, Chris, and another man. Petitioner handed Chris a shotgun, and they drove around for some time. Petitioner asked a person on the street where they could get some drugs, and they drove to the location given to them. Petitioner and Chris exited the car and disappeared down an alley. Chris had the shotgun in his jogging pants. About 15 minutes later, the two returned; petitioner was carrying the shotgun and Chris had money in his hand, and Chris said "I got him."

*Griffin v. Howes*, No. 07-14402, 2009 WL 1034889, at *21 (E.D. Mich. Apr. 17, 2009) (paragraph break added).

The jury convicted Petitioner of second-degree murder and possession of a firearm during the commission of a felony. Petitioner was sentenced to a term of parolable life imprisonment for the murder conviction and a mandatory consecutive term of two years imprisonment for the firearm conviction. Following the convictions, both Daniels and Turner offered affidavits representing that they offered perjured testimony against Petitioner at trial because of threats and coercion by the prosecution. Nevertheless, the convictions and sentences were affirmed on appeal, and Petitioner's post-conviction motion for relief from judgment was denied.

In 2007, Petitioner filed a petition for habeas corpus relief in this Court alleging, inter alia, that post-conviction affidavits by Turner and Daniels demonstrate his innocence. ECF No. 1. Petitioner's requested relief was denied. ECF No. 29.

Now before the Court is Petitioner's motion titled "Rule 60d Independent Action, and Motion for Relief from the Former Judgment." ECF No. 35. Petitioner explains that his "motion is based on a 'fraud on the district courts' by attorneys for the State of Michigan via the local prosecutor's [sic] office." Pet'r's Mot. ¶ 12. Contending that "the Wayne County Prosecutor used perjured testimony at the trial to convict Petitioner," Petitioner writes:

> Ms. Baldwin admitted that she had perjured herself at the preliminary examination, and she elected to invoke her Fifth Amendment rights [sic] not to testify. Consequently, if Ms. Baldwin's testimony was considered to be false, why is it so difficult to determine that Turner and Daniels [sic] testimony was not false [sic] after they admitted such in their affidavits. This is the blatant fraud upon the courts. . . .
>
> Consequently, this Court is called upon to revisit its former ruling on the claim under the erroneous defect by adhering to the Michigan Court of Appeals posture, which failed to address the perjured testimony, but rather, implemented the boiler plate ruse of procedurally defaulted [sic] to deny relief.

*Id*. ¶¶ 10, 14. "The court's opinion on this issue was fatally flawed," Petitioner asserts, "because no evidentiary hearing was conducted by the District Court to ascertain whether Mr. Turner or Mr. Daniels actually falsified their testimony at trial." *Id*. ¶ 7.

In substance, Petitioner's motion is a motion for reconsideration — he requests that the Court "revisit its former ruling" and reevaluate the impact of the testimony of Messrs. Turner and Daniels on his conviction.

As a general matter, "the court will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court." E.D. Mich. L.R. 7.1(h).  Likewise, motions for reconsideration "must be filed within 14 days after entry of the judgment or order."  *Id*. Petitioner's motion was filed in January 2012, more than two years after the opinion that he asks that the Court "revisit."  Thus, it is not timely.  Even if it were timely, it would nevertheless be denied because it does not demonstrate a "palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled" or "show that correcting the defect will result in a different disposition of the case." *Id*.

As this Court previously explained regarding the testimony of Messrs. Turner and Daniels,

> Turner's and Daniels's representation that they offered perjured testimony at trial lacks credibility and does not establish police-induced perjury. . . .  Turner's assertion that he was coerced lacks credibility in light of the fact that he was accompanied by counsel during his police interview. . . . Daniels's affidavit does not reveal new evidence because the substance of the testimony was presented to the jury.

*Griffin*, 2009 WL 1034889, at *7.  As this passage illustrates, the Court did not assume that Petitioner's claim regarding the testimony of these gentlemen had been "procedurally defaulted." Rather, the Court carefully considered the evidence, including the affidavits of these gentlemen,

as well as Petitioner's arguments, before concluding "the circumstances and substance of the affidavits do not satisfy Petitioner's burden. . . . Petitioner is not entitled to habeas relief for a violation of the due process clause." *Id*.

To illustrate, Mr. Turner's affidavit asserts that his statement to the police "was manufactured, coerced, and submitted under physical and mental duress" and that his trial testimony was similarly "a product of threats [and] coercion from [the prosecution]." Both of these assertions, however, are inconsistent with undisputed facts. Regarding the gentleman's statement to the police, the evidence shows that Mr. Turner was represented by counsel during the police interview. Similarly, Mr. Turner's trial testimony — that Chris, not Petitioner, said "I got him" — is inconsistent with the assertion that the prosecution coerced Mr. Turner to testify falsely against Petitioner. Petitioner does not explain how the prosecution coercing a witness to testify that another man admitted to the crime Petitioner was charged with implicates Petitioner's due process rights. If anything, this testimony tends to exculpate, not inculpate, Petitioner.

Mr. Daniels's affidavit likewise does not entitle Petitioner to the relief he seeks. It asserts that at the time Mr. Daniels overheard Petitioner admitting to shooting the victim, "I was intoxicated, and high on heroin" and that Mr. Daniels's later statement to police was "submitted under physical and mental duress." As the Court previously noted, however, the substance of these allegations was presented to the jury. On direct examination, Mr. Daniels acknowledged that at the time he overheard Petitioner he had consumed "about a pint-and-a-half" of vodka, "some 40 ounces" of beer, and "four, five packs" of heroin. On cross-examination, Mr. Daniels testified that he had been threatened by the police and that he had later lied to the police. In sum, Mr. Daniels's affidavit does not reveal a fraud on this Court — rather, it reiterates much of the testimony by Mr. Daniels at trial.

Finally, Petitioner misapprehends the significance of Ms. Baldwin's testimony to the Court's prior ruling. He argues:

> [H]ad the perjured testimony from Ms. Baldwin's preliminary examination, read into the records by the prosecution, not entered the trial, it is reasonable to conclude that Petitioner had a reasonably likely chance of acquittal. This being completely false testimony, the state perpetrated a fraud upon this court when presenting this false evidence in its pleadings.

Pet'r's Mot. ¶ 6. Contrary to Petitioner's assertions, the Court was fully apprised of the context of how Ms. Baldwin's preliminary examination testimony came to be read to the jury. Not only was the Court provided with the full transcripts of the trial, but also Petitioner's own appellate brief on this particular issue (which was, incidently, quoted at length in the Court's order). And in objecting to the magistrate's report, Petitioner did not object to the admissibility of Ms. Baldwin's testimony. *See* Pet'r's Objections 2–4, ECF No. 26. Consequently, as this was not at issue before the Court, it did not influence the Court's decision, much less "perpetrate a fraud" on the Court.

Accordingly, it is **ORDERED** that the "Rule 60d Independent Action, and Motion for Relief from the Former Judgment" (ECF No. 35) is **DENIED WITH PREJUDICE**.

                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

Dated: February 21, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Randle Griffin, #196968, at G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201 by first class U.S. mail on February 21, 2012.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS